**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>COLLINS ASSET GROUP, LLC, [1]<br><br>Debtor. | Chapter 7<br><br>Case No. 25-10994 (LSS)<br><br>**Related D.I.. 22**<br>**Hearing Date: July 17, 2025, at 3:00 p.m. (ET)**<br>**Objection Deadline: July 10, 2025, at 4:00 p.m. (ET)** |
| In re:<br><br>HOLLINS HOLDINGS, INC., [2]<br><br>Debtor. | Chapter 7<br><br>Case No. 25-10995 (LSS)<br><br>**Related D.I.. 20**<br>**Hearing Date: July 17, 2025, at 3:00 p.m. (ET)**<br>**Objection Deadline: July 10, 2025, at 4:00 p.m. (ET)** |

**THE DEBTORS' JOINT OPPOSITION TO THE MOTION OF
PLAINTIFFS AND RECEIVER FOR FERRUM CAPITAL, LLC, AND
FERRUM IV TO TRANSFER VENUE OF BANKRUPTCY CASES**

Collins Asset Group, LLC ("<u>CAG</u>" or "<u>Collins</u>"), and Hollins Holdings, Inc. ("<u>Hollins</u>," and collectively with CAG, "<u>Debtors</u>") file this *Opposition* ("<u>Opposition</u>") *to Motion* (the "<u>Motion</u>") *of Plaintiffs and Receiver for Ferrum Capital, LLC and Ferrum IV, LLC* (collectively, "<u>Movants</u>") *to Transfer Venue of Bankruptcy Cases* and in support hereof states as follows:

**PRELIMINARY STATEMENT**

1.      It is undisputed that venue of these Chapter 7 proceedings is proper in Delaware under Section 1408 of title 28 of the United States Code. Section 1408 permits a debtor to commence a case under title 11 in the district court for the district where it is domiciled, and the Debtors are domiciled in Delaware.

---

[1] The last four digits of this Debtor's federal tax identification number are 3148. This Debtor's address is 6001 W. William Cannon Dr., Suite 102, Austin, Texas 78749.
[2] The last four digits of this Debtor's federal tax identification number are 4469. This Debtor's address is 6001 W. William Cannon Dr., Suite 102, Austin, Texas 78749.

2.      Faced with the reality that the Debtors' choice of venue is entirely appropriate, Movants, who hold contingent, unliquidated, derivative and disputed claims against CAG, concoct a series of factually incorrect or irrelevant grounds to support their arguments that venue in the Western District of Texas is more appropriate than in Delaware.  In reality, other than the location of Movants, the Debtors have only a small concentration of assets and creditors in Texas and there is no compelling reason to disregard the Debtor's choice of venue.

3.      In addition, this Court represents a sensible, centralized, accessible, convenient, and just venue in which these Chapter 7 cases can and should proceed. A seasoned and experienced interim Chapter 7 Trustee has been appointed who has already begun to administer these cases, including conducting a *six-hour* initial meeting of creditors in which Movants fully participated. Retention of venue in this Court will not hinder or prejudice any creditor's ability to resolve their claims. Accordingly, this Court should not disregard, but instead, should provide substantial weight and deference to, the Debtors' decision to seek relief in the district of their choice, as specifically contemplated by the Bankruptcy Code, and deny the Motion.

## PROCEDURAL BACKGROUND

4.      On June 4, 2025 (the "Petition Date"), the Debtors initiated these cases ("Cases") by filing voluntary petitions for relief under chapter 7 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Court").

5.      On June 5, 2025, George L. Miller (the "Chapter 7 Trustee") was appointed as the interim trustee in these cases. [D.I. 6, 5].

6.      On June 18, 2025, the Debtors filed their Schedules and Statements of Financial Affairs [D.I. 18, 19; 16, 17].

11612016.v4

7.      On June 16, 2025, the Chapter 7 Trustee filed the *Motion of George L. Miller, Chapter 7 Trustee, for Entry of an Order (I) Authorizing the Trustee to Exercise the Debtors Lienholder Rights and (II) Granting Related Relief* [D.I. 13, 11].  A hearing on that motion was conducted on June 18, 2025.  Movants responded to that motion and fully participated in that proceeding.

8.      On July 9, 2025, the Chapter 7 Trustee conducted a six-hour initial meeting of creditors – the longest such meeting of his decades -long career (the "341 Meeting").  During the 341 Meeting, a number of creditors – including Movants – appeared and asked questions of the Debtors' representative.

9.      As evidenced by his robust questioning of the Debtors at the 341 Meeting, the Chapter 7 Trustee has already conducted an extensive investigation of the Debtors and their affiliates, Oliphant USA, Inc., and its affiliates, which act collectively as the master servicer of CAG's assets, which consist of non-performing loans and lines of credit and related obligations ("Oliphant").  The Debtors have also provided the Chapter 7 Trustee with extensive documents that he requested prior to the 341 Meeting and have followed up on additional requests for information subsequent to the July 9 meeting.

## FACTUAL BACKGROUND

10.      CAG's business model was to acquire portfolios of non-performing loans and lines of credit.  To fund its acquisition of these assets, certain lenders provided financing to CAG, which then conveyed a limited partial security interest in the specific accounts that were acquired with the borrowed funds.  As reflected in CAG's Schedules, there are five secured lenders who allegedly hold liens on CAG's assets. [D.I. 19 at 18-20]. The validity, extent and priority of the lenders' liens is disputed and will need to the resolved in these cases.  Each of the secured creditors' claims

are designated and "Contingent, Unliquidated and Disputed." *Id.*

11.    Beginning several years prior to the Petition Date, CAG transferred its accounts to Oliphant for collection. Oliphant operates a consumer collection business. Oliphant and CAG are affiliated through common ownership. Hollins owned 100% of the equity in CAG and has no assets other than its interests in CAG.

12.    One of the lenders that provided financing to CAG was Ferrum Capital ("Ferrum"). As alleged in the Motion, Ferrum exchanged this financing for CAG promissory notes, which were issued between 2017 and 2023 [D.I. 22, 20]. Ferrum investors filed suit in Texas regarding the notes, and J. Patrick Lowe, the Receiver for Ferrum and Ferrum IV, LLC, (the "Ferrum Receiver") was appointed in January 2024. *Id.* The Ferrum Receiver's lawsuit was unresolved as of the Petition Date. The Ferrum Receiver's claims included certain derivative claims that sought to recover damages on behalf of CAG against Oliphant and other parties, which are now controlled by the Chapter 7 Trustee. In addition, any proceeding to determine the amount of the Ferrum Receiver's claims, as well as the validity, extent and priority of its liens, is unquestionably a core proceeding. *In re AstroPower Liquidating Tr.*, 335 B.R. 309, 328 (Bankr. D. Del. 2005); *In re Wheeling-Pittsburgh Steel Corp.*, 108 B.R. 82, 84-85 (Bankr. W.D. Pa. 1989); *In re B.J. McAdams, Inc.*, 66 F.3d 931, 936 (8th Cir. 1995).

13.    In addition to the Ferrum Receiver's lawsuit, certain investors in Ferrum have filed other lawsuits in Texas against the Debtors and other parties. The investors have no contracts with the Debtors and instead filed tort claims against the defendants in those actions. The investors' lawsuits were also unresolved as of the Petition Date. *See* CAG SOFA 7.

14.    As reflected in its Schedules and Statement of Financial Affairs, CAG conducted a national business of acquiring non-performing loans and lines of credit. CAG was licensed to

conduct its business activities in 37 states. A true and correct copy of a schedule of CAG's state certifications is attached hereto as **Exhibit 1**. At present, CAG is engaged in the active collection of 144,087 separate accounts, with 16.07% of the accounts located in Texas and 0.22% of the accounts located in Delaware. A true and correct copy of a schedule of CAG's active accounts is attached hereto as **Exhibit 2**. As part of the collection process run by Oliphant on CAG's behalf, CAG routinely files collection lawsuits against defaulted borrowers. As of the Petition Date, CAG was a plaintiff in thousands of such lawsuits that were pending in courts in at least 37 states. *See* CAG SOFA 7.

15.     While CAG's business was national in scope, its connections to Texas – the proposed transferee forum -- are limited. CAG has no employees and, other than a single storage facility, has no physical assets in Texas. CAG Schedule G, 2.1. CAG's books and records are in electronic form and a substantial portion of its accounting and financial records have already been provided to the Chapter 7 Trustee. While it is true that CAG's business activities in Delaware are small when compared to its national platform – so too are its activities in Texas.

16.     As reflected on its Schedules, CAG's creditors are located in eight states, and while the Movants are located in Texas, none of the other secured creditors are located there. CAG Schedules A-C. The other secured creditors are located in Wisconsin, Florida, California, and Colorado.

## LEGAL ARGUMENT AND AUTHORITY

17.     It is undisputed that Delaware is the proper statutory venue for these bankruptcy cases under 28 U.S.C. §1408. Both Debtors are incorporated in Delaware. A Debtor may file bankruptcy in any proper venue. Venue is proper in any state of the Debtor's domicile which includes the state of incorporation for corporate debtors. *In re Innovative Commun. Co., LLC*, 358

11612016.v4

B.R. 120, 125 (Bankr. D. Del. 2006).

18.    Transfer of the venue of a bankruptcy case to another judicial district may be allowed in the interest of justice or for the convenience of the parties. 28 U.S.C. § 1412. A variety of factors may be considered by the Court in assessing a requested venue transfer, including:  The relevant factors in considering the interest of justice and convenience of parties include:

(1) The proximity of creditors of every kind to the court;

(2) the proximity of the bankrupt (debtor) to the court;

(3) the proximity of the witnesses necessary to the administration of the estate;

(4) the location of the assets;

(5) the economic administration of the estate; and

(6) the necessity for ancillary administration if [liquidation] should result.

*In re 1606 New Hampshire Ave. Assocs.*, 85 B.R. 298, 303 (Bankr. E.D. Pa. 1988).

19.    In addition to these factors, Delaware bankruptcy courts also consider a variety of private and public factors. Some private factors include the debtor's forum preference, the defendant's preference, whether the claim arose elsewhere, the convenience to the parties as indicated by their relative physical and financial condition, and, to the extent that a witness may actually be unavailable for trial in a certain forum, the convenience of the witnesses.  *In re Innovative Commun. Co., LLC*, 358 B.R. at 127.

20.    Pertinent public factors include, the enforceability of a judgement, practical considerations making trial easier, expeditious, or inexpensive, the relative administrative difficulty based on the congestion of a given forum, the local interest in deciding the controversy, and the court's familiarity with the applicable law. *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 878 (3d Cir. 1995).

21.     Overlaying the Court's analysis of a venue challenge is the requirement that the Debtors' choice of a proper venue is entitled to substantial deference. *In re NWL Holdings, Inc.,* No. 08-12847 MFW, 2011 WL 767777, at *6 (Bankr. D. Del. Feb. 24, 2011) (citation omitted); *In re Liberty State Benefits of Delaware, Inc.*, No. 11-12404(KG), 2015 WL 5468786, at *4 (Bankr. D. Del. Sept. 16, 2015).    As a result, the movants must satisfy a heightened burden of proof. *Liberty State Benefits*, 2015 WL 5468786, at *4.  Unless the balance is strongly in favor of the movant, the debtor's choice of forum should rarely be disturbed. *In re Hechinger Inv. Co. of Delaware, Inc.*, 288 B.R. 398, 402 (Bankr. D. Del. 2003).

22.     The Motion fails to present the required compelling circumstances to justify a change of venue.  Initially, the administration of the Chapter 7 cases will be substantially more efficient in Delaware, where the Chapter 7 Trustee has already engaged in a substantial investigation of the facts and acted to protect the Debtor's assets.  Moreover, the record reflects that CAG's activities were national in scope and it conducts business in every state and has thousands of active litigation matters in at least 37 jurisdictions.  The administration of the case will require liquidation of these assets, and there is no reason that process cannot occur at least as efficiently in Delaware as in the Western District of Texas.

23.     Other aspects of the administration of the case also do not support a venue transfer. The Debtor's records are available electronically and many of the key records have already been provided to the Chapter 7 Trustee in Delaware.  Other than a single storage facility in Texas, no physical assets are located in that state.  The Debtors also had no employees.  To the extent the Chapter 7 Trustee or other interested parties need to conduct discovery outside of Delaware, they can avail themselves of discovery tools such as Bankruptcy Rule 2004 to obtain such information, just as interested parties do in myriad cases in this district on a regular basis.  The use of modern

7

discovery tools negates any argument that the availability of witnesses should compel a venue transfer under the heightened standards applicable to the Motion. *See Alcoa Inc. v. Alcan Inc.*, No. CIV. 06-451-SLR, 2007 WL 1948821, at *4 (D. Del. July 2, 2007).

24.    Movants also fail to explain how a transfer to the Western District of Texas will materially alleviate any burden of obtaining witness testimony or other discovery.  Other than themselves, Movants have identified no other key witnesses in Texas or whether they would be subject to compelled appearances in San Antonio, Texas, where the case would reside if the transfer is allowed.  Large swaths of the State of Texas itself would be outside of the jurisdictional reach of the proposed transferee forum. Accessing any witnesses and other evidence in these locations would involve a virtually identical burden regardless of whether the case resides in Wilmington or San Antonio.

25.    Other than the convenience of litigating close to their homes, Movants cannot identify any benefit to the Debtors' creditor body *as a whole* by their proposed change of venue. CAG's secured creditors are sophisticated entities that invested millions of dollars in the company and are located throughout the United States.  Other than litigation claimants with unliquidated claims, CAG's unsecured creditors consist of government agencies and corporate entities that are located in four states.  In addition, CAG was licensed in 37 states and has active accounts in every state. Movants do not even attempt to demonstrate how the Western District of Texas will be substantially more convenient to the Debtors' other creditors, the account debtors who owe money to CAG and other potentially interested parties in this case.

26.    Movants also attempt to rely on the forum selection clause designating Travis County, Texas as the exclusive jurisdiction for disputes arising under the Ferrum notes as providing a further justification for the venue transfer. Motion at ¶70.  This argument is

8

unpersuasive for several reasons.  First, even if enforceable, the forum selection clause only applies to disputes under the Ferrum notes.  It has no application to the general administration of the bankruptcy or the resolution of claims held by other creditors.  Second, any disputes arising under the Ferrum notes would necessarily involve the allowance or disallowance of the Ferrum Receiver's claims in the bankruptcy, or the extent of any liens on the Debtors' assets.  Such proceedings are unquestionably core and it is well established that forum selection clauses are not enforceable in core proceedings. *In re Axiant, LLC*, No. 09-14118 MFW, 2012 WL 5614588, at *2 (Bankr. D. Del. Nov. 15, 2012); *Wheeling-Pittsburgh Steel Corp.*, 108 B.R. at 84-85.  Finally, the forum selection clause only applies to the Ferrum Receiver.  The other Movants had no contracts with CAG and no mandatory forum selection is applicable to their alleged claims.

27.    Finally, the requested transfer should be denied because allowing it would increase the administrative expenses in the Chapter 7 cases and risk prejudice to the interests of all creditors. Starting over in the Western District of Texas would impose significant hardship and prejudice. The  Debtors have minimal cash (which is controlled by the Chapter 7 Trustee) and they could not fund the additional administrative expenses that would arise in the transferee forum, such as retaining Texas counsel.  The Debtors' inability to fund the cost of their additional bankruptcy obligations – such as a do-over of the 341 Meeting with a new trustee -- could jeopardize the cases from proceeding.  The additional administrative cost of relocating the cases, and the potential negative effect caused by the Debtors' inability to participate, would negatively impact creditor recoveries. The negative effect of the transfer on the entire creditor body – not just Movants – must be considered and weighed by the Court and in this case also compels the denial of a change in venue. *See In re Onco Invest. Co.*, 320 B.R. 577, 580 (Bankr. D. Del. 2005); *In re Mobile Tool Intern.*, 320 B.R. 552, 562 (Bankr. D. Del. 2005).

WHEREFORE, for the foregoing reasons, the Motion should be denied.

Dated: July 10, 2025
Wilmington, Delaware

/s/ Richard M. Beck
Richard M. Beck (DE Bar No. 3370)
Alyssa M. Radovanovich (DE Bar No. 7101)
**KLEHR HARRISON HARVEY**
**BRANZBURG LLP**
919 N. Market Street, Suite 1000
Wilmington, Delaware 19801
Telephone:    (302) 426-1189
Facsimile:    (302) 426-9193
Email: rbeck@klehr.com
            aradovanovich@klehr.com

Counsel for the Debtors